FERNANDO RIVERA ESCUTÉ, Petitioner, *v.* GERARDO DELGADO, WARDEN OF THE STATE PENITENTIARY OF PUERTO RICO, Respondent.

No. 808. Submitted July 29, 1958.—Decided December 16, 1958.

*Santos P. Amadeo, Francisco García Quiñones, Enrique González* and *Gilberto Concepción de Gracia* for petitioner. *Francisco Espinosa, Jr., Acting Attorney General, Arturo Estrella, Assistant Attorney General,* and *William Fred Santiago, Assistant Fiscal of the Supreme Court,* for respondent.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

The petition for habeas corpus filed by the petitioner on June 23, 1958 alleges that the investigation of the crime for which he was tried and convicted was made by the district attorney pursuant to subdivision 4 of § 11 of the Code of Criminal Procedure which provides that the examination of witnesses by the prosecuting attorney shall be in private;

that he was interrogated by District Attorney José C. Aponte, without the latter having advised him of his constitutional right to be assisted by counsel, and that he had no legal assistance during said examination made in the presence of police officers and detectives. That when interrogated he was 19 years of age and had attended up to the fourth grade in elementary school; that his conviction was based solely on the confession exacted from him without assistance of counsel and that without said confession he could not have been convicted because the other evidence introduced at the trial was insufficient. Also, that his prosecution and conviction are null and void in violation of the Fifth and Sixth Amendments to the Constitution of the United States and of the second paragraph of § 2 of the Organic Act of 1917, which guaranteed him the constitutional right to assistance of counsel at every stage of the proceeding from the moment he was detained and interrogated, and in violation of the Due Process Clause of the Fourteenth Amendment upon being deprived of counsel in the investigatory stage of the prosecution during which a confession was obtained from him without legal assistance. He maintains in support of his petition that according to the decision delivered by the Supreme Court in the case of *In re Groban*, 352 U.S. 330, 1 L. Ed. 2d 376, a defendant in a state criminal trial has a right, under the Due Process Clause, to be heard through his own counsel before and at the investigatory proceeding "if said examination is made under inquisitorial conditions like the ones authorized by § 11, subdivision 4 of the Code of Criminal Procedure."

After issuing the writ, we set a hearing for July 15, 1958. At the commencement petitioner submitted an amendment to his petition, which was permitted, alleging further that when he was investigated and interrogated he had the mental capacity of an 8-year old child and was psychologically classified as a "moron," according to an examination made by professor Alfredo Silva of the University of

Puerto Rico, and according to the testimony of said professor at the trial. He offered as sole evidence the record on appeal of the murder trial in the former District Court of San Juan in 1944, which contains the transcript of evidence presented at the trial. The district attorney did not offer any evidence but he was granted a term to submit petitioner's birth certificate, which he did. It appears therefrom that "Alejandro" Rivera "Escuter" was born on June 10, 1922 and was registered in the Registry of Vital Statistics on June 9, 1930. The district attorney attached to the certificate a sworn statement of the Warden of the State Penitentiary stating that it appears from petitioner's record that he was registered under the name of Alejandro Rivera Escuté, and that he was committed to the Industrial Reform School of Mayagüez under the name of Julio Rivera Escuté by virtue of a judgment of November 13, 1935, of the Juvenile Court of San Juan, which convicted him of burglary in the second degree and ordered his commitment until he reached the age of 19 years, and that he was discharged from the Reform School on June 10, 1941, upon attaining said age.

The record shows that on January 28, 1944 petitioner was sentenced to life imprisonment by the former District Court of San Juan, after a verdict of guilty of murder in the first degree. In the trial court he attacked the validity of his written confession and objected to its admission in evidence on the ground that he was deprived of his constitutional right to assistance of counsel in the investigation or what he called "preliminary examination." The judge admitted the confession on the basis that there was no statutory provision giving the accused such right in a "preliminary examination," and that the district attorney's investigation here is private. (Tr. Ev., murder case, pp. 38, 76–77.) On appeal he assigned as separate error the fact that he was deprived of the right to legal assistance in the preliminary stage of the proceedings.[1] Upon deciding this

contention we said in affirming the judgment: (*People* v. *Rivera*, 66 P.R.R. 207, 211).

"In his third assignment the appellant urges that the lower court erred in holding that the accused was not deprived of his constitutional and statutory right to be assisted by counsel during the preliminary examination. His contention is based on the provisions of § § 44, 11, and 141 of the Code of Criminal Procedure, and on subdivision 2, § 2 of our Organic Act, and the doctrine laid down in *Woods* v. *United States, supra, Powell* v. *Alabama,* 287 U. S. 45, *Johnson* v. *Zerbst,* 304 U. S. 458, *People* v. *Napthaly,* 105 Cal. 641, and other cases. In passing upon the question thus raised, we will repeat what we said in the case of *People* v. *Travieso, supra,* that neither the Organic Act nor our Code of Criminal Procedure provides, as a prerequisite for the validity of an information, that the same be filed by the district attorney after the holding of a preliminary examination and the issuance of an order of commitment by a committing magistrate or judge; and to this we add, as was held in *People* v. *Montes,* 64 P.R.R. 306, that in this jurisdiction there is no constitutional provision requiring that an accused be represented by counsel prior to the arraignment. Moreover, assuming that our laws require for the validity of an information that a preliminary examination be previously held, such a right of the accused has been waived by his failure to file a motion to dismiss the prosecution, before or at the time of the arraignment, on the ground of noncompliance with such legal requisite. *People* v. *Travieso, supra; Ex parte McConnell,* 83 Cal. 558, and *People* v. *Ronsse,* 26 Cal. App. 100, 146 Pac. 65."

We issued the writ convinced that the question raised before us was not decided in the appeal within the consti-

---

[1] Other assignments of error to the effect that petitioner had not intelligently waived his constitutional right not to incriminate himself because according to the testimony of professor Silva, he was a mentally deficient person of the moron type who did not understand the scope of the legal warnings given to him by the district attorney before the reception of his confession, and did not realize the latter's consequences; that the confession had been obtained through physical and moral coercion, and that without it the evidence was insufficient to uphold a judgment of conviction, were considered by this Court and set aside in the light of the evidence presented to the trial court and the jury.

tutional framework presented to us here, which question, if petitioner should be right, might result in the invalidation of the proceedings and of the judgment that has deprived the latter of his liberty for lack of due process of law, or possibly for lack of jurisdiction.[2]

As may be noted from the paragraph quoted from the *Rivera* case, the question of his right to legal assistance at the stage when he was interrogated and gave his confession was decided on the authority of *People* v. *Travieso*, 60 P.R.R. 518 (1942) and *People* v. *Montes*, 64 P.R.R. 306 (1944). Prior to these cases, in *Ex parte Hernández*, 54 P.R.R. 396 (1939); *Ex parte Resto*, 55 P.R.R. 700 (1939); *Rodríguez* v. *District Court*, 59 P.R.R. 650 (1942), and in a long line of cases following that of *Hernández*,[3] we had established

---

[2] In his memorandum in support of the issuance of the writ, petitioner states that in his appeal he had raised the constitutional question that he now assigns, but that it was decided against him by a court whose members are not holding office at present, and that this being the case, the question is now *"new"* for all the members of the court, "who may have an opinion at cross purpose with the judges who in 1946 dismissed the question raised in said case." As an institution embodying the judicial power, this Court is at all times one and indivisible regardless of who its judges may be at a specific time. Its judgments entered with jurisdiction establish a permanent state of law so long as they are not reversed or modified. And as between the parties, they constitute the law of the case. It should not be inferred from the fact that we issued the writ in the face of similar motivations that this Court has in mind to reopen to discussion controversies already adjudicated between the same parties, in order to probe the opinion that may be held by the justices of today as possibly different from that of the justices of yesterday. This would not lead to a healthy standard in the discharge of judicial function and would tend, at least, to take away from jurisprudence that condition of stability so useful to a society governed by the law as interpreted by its courts. We decided to re-examine the question because it has not been previously decided in the light of the constitutional guarantees.

[3] *Andino* v. *District Court*, 54 P.R.R. 577 (1939); *People* v. *Correa*, 54 P.R.R. 755 (1939); *People* v. *Mercado*, 54 P.R.R. 859 (1939); *People* v. *Santana*, 55 P.R.R. 231 (1939); *Ex parte Oropesa*, 55 P.R.R. 274 (1939); *Ex parte Rodríguez*, 55 P.R.R. 403 (1939); *People* v. *Ortiz*, 57 P.R.R. 457 (1940); *People* v. *Muriel*, 57 P.R.R. 896 (1941); *Dijols* v. *Lugo, Warden*, 58 P.R.R. 5 (1941); *Ex parte Casellas*, 58 P.R.R. 107 (1941); *Veguilla* v. *Saldaña, Warden*, 58 P.R.R. 877 (1941); *Jiménez* v. *District Court*, 59 P.R.R. 29 (1941); *Berríos* v. *Saldaña*, 59 P.R.R.

in an absolute and unqualified manner the right of an accused to assistance of counsel, under pain of invalidating the trial for lack of jurisdiction, in the proceedings before the court, including the appearance for arraignment, unless that assistance had been intelligently and knowingly waived. With those decisions we gave the same interpretation and scope to the second paragraph of § 2 of the Organic Act in force— "in all criminal prosecutions the accused shall enjoy the right to have the assistance of counsel for his defense" — as that given by the National Supreme Court to the pertinent part of the Sixth Amendment to the Constitution in *Johnson* v. *Zerbst*, 304 U.S. 458, 82 L. Ed. 1461, concerning persons accused of crime before the federal courts.

In *People* v. *Montes, supra,* where the accused attacked the admission in evidence of his sworn statement before a justice of the peace on the ground that he was not assisted by counsel at the time, we stated without setting forth grounds but citing the *Travieso* case, that "there is no constitutional requirement in this jurisdiction that a defendant must be represented by counsel prior to arraignment." In *Waldin* v. *Feliciano*, 62 P.R.R. 202, the question of assistance of counsel during the preliminary examination was raised, but it was not decided for lack of evidence in the record. It was in the *Travieso* case where the question was thoroughly treated for the first time.[4] However, the facts of this case tended to turn the question of assistance of counsel to a

---

895 (1942) and 61 P.R.R. 563 (1943); *López* v. *Saldaña*, 60 P.R.R. 304 (1942).

In *Ruiz* v. *Rivera, Warden of the Insular Penitentiary*, 71 P.R.R. 499 (1950), we decided that the right to assistance of counsel also covered the isolated act of arraignment.

[4] Formerly, in *Martínez* v. *Crosas, District Judge*, 28 P.R.R. 713 (1920), we upheld, applying the second paragraph of § 2 of the Organic Act, the right of an accused to assistance of counsel during the drawing and challenges of a Grand Jury which was to investigate a case against defendant, and we declared the prosecution void upon the refusal to permit such legal assistance. But according to the Grand Jury Law of 1919, these proceedings were carried out in open court after having summoned the defendant and the prosecuting attorney.

rather procedural aspect, not constitutionally in the sense that it was approached in *Powell* v. *Alabama*, 287 U.S. 45, 77 L. Ed. 158, in the light of the Fourteenth Amendment to the Constitution, in *Zerbst*, under the Sixth Amendment, and in the ones of *Hernández* and other cases decided by us, pursuant to the provision of our Organic Act corresponding to this amendment. Let us examine the facts in the *Travieso* case. There defendant was arrested and bailed for the crime of an attempt to kill, and in October 9, 1939 he appeared for *arraignment* with due legal representation. Two years later, in 1942, he filed a motion to dismiss on the ground that the court did not acquire jurisdiction, as he had not been assisted by counsel from the time of his arrest and during the preliminary examination by the committing magistrate. The motion was denied and upon being convicted on the merits, he appealed to us alleging as error the court's refusal to dismiss the case on the ground of lack of legal assistance "during the initial stage of the prosecution," that is, during the "preliminary examination." At the outset we stated that the cases of *Hernández*, *Resto*, and others decided according to *Johnson* v. *Zerbst* and *Powell* v. *Alabama*, were not applicable, and we focused the problem in the light of the case of *People* v. *Napthaly*, 105 Cal. 641 (1895), invoked by appellant therein as well as by the petitioner in his appeal. The statutory and constitutional ground of this case was as follows:

Sections 858 to 883 of the Penal Code of California of 1872, as they prevailed in 1902 when we adopted the criminal procedure of that state, contained an integral procedure for the examination of an accused. When he was brought before the magistrate under arrest, with or without warrant, it was the duty of the magistrate to inform him immediately of the charge against him, *and of his right to the aid of counsel at every stage of the proceeding*. (Section 858.) He had to allow the defendant a reasonable time *to send for counsel*, and postpone the examination for that

purpose and, upon request of the defendant, require a peace officer to take a message to any counsel in the city the defendant may name. The officer, without delay and without fee, had to perform that duty. Defendant's examination began immediately after the appearance of counsel, or if, after waiting a reasonable time therefor, none appeared, the magistrate proceeded to examine the case. (Sections 859, 860.) Thereinafter the preliminary examination constituted a judicial hearing. The accused had a right to have the magistrate compel attendance of his witnesses and to have the depositions of witnesses taken; to have witnesses for the prosecution examined in his presence and to cross-examine them; to have the testimony reduced to writing, or in the discretion of the magistrate, in shorthand; to have every person excluded, except the defendant and his counsel, the clerk, and the officer having the defendant in custody; to have the witnesses examined separately and prevented from conversing with each other, and to have the record contain the objections made by him to the questions as well as if the witness declined to answer. If, after hearing the proofs, it appeared either that no public offense had been committed or that defendant was not liable, it was the duty of the magistrate to order the defendant to be discharged by an indorsement on the record. If there was sufficient cause to believe the defendant guilty, he then ordered also by indorsement, that he be held to answer to the offense, and admit him to bail, if the offense was bailable. The complete record of the hearing had to be kept in the proper court having jurisdiction over the case and it was not permitted to be exhibited or copied by any person except a judge of the court having jurisdiction of the offense, or authorized to issue writs of habeas corpus, the attorney general, district attorney, and the defendant or his counsel.[5]

---

[5] The foregoing proceeding still exists in California, with some modifications to make legal aid more effective at that stage of the preliminary examination. 49 West's Annotated California Codes, Penal, §§ 858–883. Section 858 which requires the magistrate to immediately

In relation to the foregoing proceedings § 995 of the Penal Code established, and still provides, that upon defendant's motion, the information (in contrast with the indictment), shall be set aside if before the filing thereof the defendant has not been *legally committed* by a magistrate.[6] The Constitution of California, on the other hand, provided as at present, that offenses shall be prosecuted by information *after examination and commitment by a magistrate*, or by indictment, with or without such examination or commitment. Napthaly was accused of a crime and the magistrate failed to inform him of his right to aid of counsel (he was a lawyer) and refused to postpone the examination for the purpose of enabling him to employ counsel. On arraignment and before pleading Napthaly moved to set aside the information on the ground that he had not been assisted by counsel at the examination. Upon reversing the lower court which refused to set aside the information, the Supreme

---

inform defendant of his right to aid of counsel has not been altered. Section 859, recently amended in 1957, provides further that the magistrate *assign* counsel in this stage if defendant so desires and is unable to employ one, in cases over which the Superior Court has original jurisdiction. Section 859(a), added in 1935, in cases of felony does not authorize the receiving of a plea of guilty from any defendant in the preliminary examination, *in the absence of his attorney or without legal assistance*, and § 860, amended in 1935, authorizes a defendant *represented by counsel*, in certain cases, to waive his right to the preliminary examination. *Cf. People* v. *Brooks*, 72 Cal.App. 2d 657, 165 P.2d 51; *People* v. *Greene*, 108 Cal.App.2d 136, 288 P.2d 616; *People* v. *Williams*, 124 Cal. App. 2d 32, 268 P.2d 156.

In 1953 § 866.5 was added providing that the defendant may not be examined at the examination, *unless he is represented by counsel*, or unless he waives his right to counsel after being advised at such examination of his right to aid of counsel. Section 870 was amended (1909) providing that upon demand by a defendant who has been committed to answer for an offense, the magistrate must order the immediate delivery of the depositions attached to the complaint or taken at the preliminary examination, to said defendant or his attorney.

The provisions of §§ 858, 859, 859(a) and 860 in cases of felony, were made a part of the Constitution of the State, by the 1934 Amendment to § 8 of Art. I.

[6] Pursuant to 1939 amendment it was added as a second ground to set aside the information if the defendant was committed without reasonable or probable cause.

810

Court of California stated that a preliminary examination not postponed for the purpose of enabling defendant to employ counsel, was in no sense a *legal* examination since it was a plain and palpable violation of a fundamental right of the defendant which rendered the commitment *illegal*. Consequently, before the filing of the information he had not been *legally* committed by a magistrate, and the district attorney could not, in the light of the afore-mentioned constitutional provision (Art. I, § 8), file the information for which reason it had to be set aside.[7]

However, upon our adopting in 1902 the penal procedure of California, we omitted to establish here such preliminary proceedings with the intervention and assistance of counsel. On the contrary, we empowered the district attorney in cases of original jurisdiction of the former district court, to file informations *validly*, after swearing witnesses or based on the testimony of witnesses taken before a justice of the peace, under his solemn belief that there was probable cause for filing it. We gave him authority to summon witnesses and examine them in private, and until our Constitution was proclaimed, to determine the existence of probable cause, order arrests, and fix bail.[8] As to the right to aid of counsel, it was specifically granted in § 141 adopted also from California on the same date, as modified by the Act of March 9, 1905, upon the defendant's appearance for arraignment before the court, which to a certain point boils down the general provision on assistance of counsel in a "criminal action" of § 11. There does not exist here the step that

[7] In identical or similar sense as *Napthaly, cf.: People* v. *Williams,* 268 P.2d 156 (1954); *People* v. *Mora,* 262 P.2d 594 (1953); *Ex parte James,* 240 P.2d 596 (1952); *People* v. *Coker,* 231 P.2d 81 (1951); *People* v. *Avilez,* 194 P.2d 829 (1948); *People* v. *Miller,* 11 P.2d 884 (1932); *People* v. *Salas,* 250 Pac. 526 (1926); *cf. People* v. *Chesser,* 178 P.2d 761 (1947); *People* v. *Stroble,* 226 P.2d 330 (1951), affirmed 343 U.S. 181.

[8] Sections 3, 11, 98 of the Code of Criminal Procedure; 44(a), 74 and 100 before being amended by Act No. 22 of July 24, 1952 (Sess. Laws, p. 92), § 97 before being repealed by said Act.

some lawyers frequently label "examination" or "preliminary hearing" in an attempt to apply to the examination in private indulged by our prosecuting attorneys, jurisprudence developed in the light of preliminary proceedings like the one in California recently described, the one in New York, and in many other states where the right to assistance of counsel is unmistakably guaranteed.

It is true that § 44 provides that "The defendant must in all cases be taken before a *justice of the peace* without unnecessary delay *for examination,* and any attorney at law entitled to practice in courts of Puerto Rico may, at the request of the prisoner after such arrest, visit the person so arrested." [9] Even assuming that that section establishes

---

[9] Because it is frequently invoked in connection with the right to a preliminary hearing and the assistance of counsel, it is convenient to clarify the historical position of this section. It is equivalent to § 825 of California as it prevailed in 1902, and the latter formed and still forms part of a series of provisions (§ § 811 to 829) under the chapter entitled "The Warrant of Arrest" which began by establishing that when a complaint charging a public offense is filed with a magistrate, after he examines on oath the complainant and the witnesses and is satisfied therefrom that the offense had been committed, the magistrate must *issue a warrant of arrest* (§ § 811–813). Sections 814 *et seq.* defined and described the *warrant* and the manner of issuing it in different cases and § 825, equivalent to our § 44, provided as it does now, that the defendant must be taken before the magistrate without unnecessary delay (the magistrate may be the one who issued the warrant, or someone else—§ § 821–824)', and any attorney at law entitled to practice in the courts of California may, at the request of the prisoner, visit the person so arrested. Sections 834 to 855 following § 825, as in the present, dealt with the arrest and the method of making it, including the arrest without warrant and by private persons. (Sections 114 to 130 of our Code.) Then followed § 858 with which, as we have stated, commenced the whole proceeding of preliminary examination by the magistrate.

As was subsequently amended in 1907 and 1927, § 825 imposes upon the officer who issues the arrest the duty to take the defendant before the magistrate without unnecessary delay, and in any event, within two days after his arrest; and any attorney at law, *or any relative* may, at the request of the prisoner, visit him. It is declared a misdemeanor if any officer in charge of the prisoner refuses to allow any attorney to visit the prisoner, and shall pay to the party aggrieved the sum of $500.

Because of the disarticulated way in which § 44 and others were brought to our procedure, it is difficult to grasp with precision its real background, especially since we did not adopt the complementary sections

812

in its own fashion a preliminary examination in the investigatory phase of the offenses, a question which is not now before us, we have not made it, as in California, a condition precedent for filing an information. On the other hand, our procedure does not contain either a provision like the afore-mentioned § 995, which connects in its juridical effects the validity of the examination with the validity of the information.

relative to the preliminary examination, and it gives the impression of being a repetition of the preceding § 32 (equivalent to § 849 of California), which is historically interrelated with the afore-mentioned § § 114 to 130. It is well to note that we interposed in § 44 the phrase *"for examination"* which did not and does not appear in the California text, and we referred specifically to the justice of the peace instead of a magistrate, which in such case would have included the prosecuting attorney himself. (Section 13 of the Code of Criminal Procedure.) But regardless of the scope of this section, the validity of the information investigated and presented in court by the prosecuting attorney as provided by § § 3, 11(4), 70 and 98, or of the subsequent proceedings was not made to depend on it; nor does it require the prosecuting attorney to permit the presence of counsel during his interrogation or to make any legal warning to this effect, which would be a contradiction to the provisions of § § 3 and 11(4). Section 825 and its equivalent § 44 contain mandates to be carried out by peace officers, not by judicial officers. We have seen how the nonfulfilment of those mandates is punished in California, and our Penal Code in its § 134 finds guilty of a misdemeanor every officer or other person who having made an arrest, unlawfully delays to take the person arrested before a justice of the peace or other officer having jurisdiction to examine him. The Supreme Court of California even though it severely condemns the violation of this section and has held that it constitutes an unlawful arrest, has not, as far as we know, on that ground alone, decreed the nullity of the subsequent trial held in court, or of the judgment. In the absence of other elements of coercion it has not declared inadmissible in evidence, for that sole reason, a confession given during that illegal detention. Other states having similar provisions have assumed the same or similar position. *Cf. Lisenba v. California*, 314 U.S. 219 (1941); *People v. Speaks*, 319 P.2d 709 (1958); *People v. Soto*, 317 P.2d 1005 (1957); *People v. Jablon*, 314 P.2d 824 (1957); *People v. McCrasky*, 309 P.2d 115 (1957); *Rogers v. Superior Court of Alameda County*, 291 P.2d 929 (1955); *Dragna v. White*, 289 P.2d 428 (1955); *People v. Guarino*, 282 P.2d 538 (1955); *People v. Collins*, 255 P.2d 59 (1953), cert. den. 346 U.S. 803; *People v. Boyden*, 253 P.2d 773 (1953); *People v. Stroble*, 226 P.2d 330, aff. 343 U.S. 181, reconsideration denied 343 U.S. 952; *People v. Zamora*, 152 P.2d 180 (1944); *People v. Imamura*, 147 Pac. 219 (1915); *State v. Mihoy*, 93 A.2d 661 (N.H. 1953); *State v. Mangino*, 86 A.2d 425 (N.J. 1952).

Hence, upon deciding the *Travieso* case, which dealt with a motion to dismiss the information, in which we did not follow *Napthaly* and other decisions to the same effect, the basic constitutional problem on the right to assistance of counsel was dissolved in the procedural question relative to the existence of "preliminary examination" and the power of the district attorney to file an information validly, leading us to dispose of the case in the following manner, although the fact that we did not apply the cases of *Hernández*, *Resto*, and other afore-mentioned ones, might create the inference that we did not acknowledge the right to legal assistance prior to arraignment:

"Neither the Organic Act of Puerto Rico nor our Code of Criminal Procedure contains any provision requiring for the validity of an information that the latter should be filed by the district attorney after a preliminary examination and upon the issuance of an order of arrest by a committing magistrate.

"According to § 3 of the Code of Criminal Procedure, where there is involved a public offense, such as the one herein over which a district court has original jurisdiction, the prosecution must be commenced 'by information filed by the prosecuting attorney, in open court, verified by his affidavit, which shall be sufficient if it states that the information is based upon the testimony of witnesses, sworn before him, or upon the testimony of witnesses taken before an examining magistrate.'

"The decisions examined by us hold that by failing to file a motion to dismiss the prosecution, before or at the time of the arraignment, on the ground that he has not been granted a preliminary examination, the defendant waives that objection. *Ex parte McConnell*, 83 Cal. 558; *People* v. *Ronsee*, 26 Cal. App. 100, 146 P. 65; *People* v. *Ramey*, 27 P.(2d) 941; *People* v. *Walsh*, 243 P. 31, 32; *People* v. *Salas*, 50 P. 526; and *State* v. *Norman*, 52 P. 986.

"The defendant also waived the objetion of the failure to hold a preliminary examination where on being arrested, he gives bail for his appearance before ne district court to be arraigned by the district attorney. *Nowak* v. *Waller*, 56 Hun. (N.Y.) 647, 10 N.Y. Supp. 199, ffirmed in 132 N.Y. 590, 30 N.E. 868."

Upon reproducing the preceding grounds on which petitioner's appeal was decided (66 P.R.R. 207, 211), we approached the procedural question in a similar fashion, particularly upon stating, as in the *Travieso* case, that even assuming that our laws require that a preliminary examination be previously held, the petitioner had waived his right upon failure to file a motion to set aside the information.[10]

The question of the right to assistance of counsel as pre-sented to us in the petition for habeas corpus delves deeper into the field of constitutional guarantees. It has not been discussed before in this aspect and that is why we issued the writ. We must face two propositions: (1) whether pursuant to the second paragraph of § 2 of the Organic Act then in force, petitioner's prosecution in court had in 1944 and in which he enjoyed due legal assistance is void for lack of jurisdiction because during the investigation of the crime and prior to arraignment he was not assisted by counsel or advised of such right by the proper authorities; and (2) whether that part of our system of criminal procedure which permitted the district attorney to make privately the investigation of the crime and the examination of the prisoner in which he made a confession, without the right

---

[10] The only ground provided by our Code to set aside the information upon being filed, is the failure of the district attorney to indorse and subscribe it (§ § 144 145 and 146). According to § 996 of California, any irregularity or illegality at a preliminary examination is waived if defendant makes no motion, under § 995, to set aside the information upon being arraigned, and before entering pleas. Alleged irregularity or illegality may not be raised for the first time on appeal. *Cf. People* v. *Nation*, 239 P.2d 891 (Cal. 1952); *People* v. *Wilson*, 236 P.2d 9 (Cal. 1951), *cert. denied*, 342 U.S. 915; *People* v. *Hall*, 224 P.2d 812 (Cal. 1950); *People* v. *Knight* 218 Pac. 79 (Cal. 1923); *Lingo* v. *Hann*, 71 N.W.2d 716 (Neb. 1955); *State* v. *Lubetkin*, 276 P.2d 520 (Ariz. 1954); *State* v. *Buchanan*, 252 P.2d 524 (Idaho 1953); *Clark* v. *State*, 218 P.2d 410 (Okla. 1950); *People* . *Tate*, 23 N.W.2d 211 (Mich. 1946). Habeas corpus does not lie either. *Cf. Application of Berry*, 279 P.2d 18 (Cal. 1955); *Ex parte Razutis*, 29 P.2d 15 (Cal. 1950), *cert. denied*, 340 U.S. 842; *Ex parte Tedford*, 191 P.2d 3 (Cal. 1948), *cert. denied*, 335 U.S. 847; *Ex parte Haas*, 44 P.2d 411 (Cal. 1935); *Bowman* v. *Alvis*, 96 N.E.2d 605 (Ohio 1950).

to have assistance of counsel at that moment, is so manifestly in conflict with those fundamental principles of liberty and justice embodied in the due process of law of the Fifth and Fourteenth Amendments to the Federal Constitution, that the subsequent proceeding in court even with due legal assistance are not deemed to constitute a fair and impartial trial in the light of said constitutional guarantees, and must be set aside.[11]

As a problem of jurisdiction it is conclusive in the federal courts under the Sixth Amendment and we adhered to it under § 2 of the Organic Act, that an accused has the absolute and unqualified right to be represented by counsel of his own choice or counsel appointed by the court, as soon as information has been filed and the accused is taken before a court of justice, except, of course, when legal assistance is intelligently and competently waived. The jurisprudential rules of *Johnson* v. *Zerbst, supra, Walter* v *Johnson*, 312 U.S. 125 (1941) and *Glasser* v. *United States*, 315 U.S. 60, 86 L. Ed. 680 (1942), were perpetuated in written law codified in *Rule 44* of the Federal Rules of Criminal Procedure.[12]

---

[11] In petitioner's murder trial the question arose as to whether his confession given during the interrogation, in which as we know, he did not have counsel, was admissible in evidence. In this appeal petitioner has not presented any other evidence in addition to hat introduced at the trial, considered by the jury and affirmed by us. Even if we were of the opinion that the fact itself of not having consel when he confessed was a legal obstacle for its admission in eviance, in this appeal we can not exercise the remedial power to order a ew trial eliminating it, unless that fact alone rendered the confession avoluntary, in which case it would be ultimately imperative, beyond ay doubt, to set aside the judgment of conviction under the due process clause. We shall take up later whether the confession was involuntar for that sole reason. In this appeal, therefore, we are restricted to cestioning the invalidity of the trial for lack of jurisdiction under § 2 of the Organic Act of 1917, or to question its invalidity under the dr process clause.

[12] Rule 44, effective March 21, 1946, prodes that if a defendant appears in court without counsel, the court mst advise him of his right to counsel and assign counsel to represent im at every stage of the proceedings, unless he elects to proceed wiout counsel, or is able to obtain counsel. Ever since 1790, any defelant accused of treason or

The decision in *Johnson* v. *Zerbst*, however, did not touch on points beyond its very facts, which are well-known. It did not extend the Sixth Amendment in connection with legal representation to stages prior to the appearance in court after the information has been filed.

Insofar as the philosophical reason of *Zerbst* as to the necessity of the intervention of counsel was a derivative of the pronouncement of *Powell* v. *Alabama, supra*, it can be said that the reasoning in the philosophical order was transfigured and took shape as a constitutional provision in that classical principle of due process requiring that a person be tried and heard before being convicted, and as something cosubstantial with the right of hearing, that it be by counsel if so desired. We copy from *Powell* v. *Alabama*, these words: (287 U.S. 45, 68–69.)

"It never has been doubted by this court, or any other so far as we know, that notice and hearing are preliminary steps essential to the passing of an enforceable judgment, and that they, together with a legally competent tribunal having jurisdiction of the case, constitute basic elements of the constitutional requirement of due process of law. The words of Webster, so often quoted, that by 'the law of the land' is intended 'a law which hears before it condemns,' have been repeated in varying forms of expression in a multitude of decisions. In *Holden* v. *Hardy*, 169 U.S. 366, 389, the necessity of due notice and an opportunity of being heard is described as among the 'immutable principles of justice which inhere in the very idea of free government which no member of the Union may disregard.' And Mr Justice Field, in an earlier case, *Galpin* v. *Page*, 18 Wall. 35, 368–369, said that the rule that no one

other capital crime ha a statutory right to the assignment of counsel at his request, but as o other crimes, however, the Sixth Amendment prior to the Zerbst decisin was construed as authorizing but not requiring the appointment of counsl as a question of jurisdiction and of due process of law. Barron, *Fleral Practice and Procedure*, Vol. 4, § 2661. Rule 5, referring to the reliminary proceeding before a Commissioner, provides that the latter ust inform the defendant of the complaint against him, of his *right ⸱ obtain counsel* and of his right to have a preliminary examination. Lior to Rule 5, effective on March 21, 1946, 18 U.S.C. § 595, did not impse the obligation to give such advice.

shall be personally bound until he has had his day in court was as old as the law, and it meant that he must be cited to appear and afforded an opportunity to be heard. 'Judgment without such citation and opportunity wants all the attributes of a judicial determination; it is judicial usurpation and oppression, and never can be upheld where justice is justly administered.' . . .

"*What, then, does a hearing include? Historically and in practice, in our own country at least, it has always included the right to the aid of counsel when desired and provided by the party asserting the right. The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel.* . . . If in any case, civil or criminal, a state or federal court were arbitrarily to refuse to hear a party by counsel, employed by and appearing for him, it reasonably may not be doubted that such a refusal would be a *denial of a hearing*, and, therefore, of due process in the constitutional sense." (Italics ours.)

The right to be heard by counsel is a derivative of the right to be heard before being convicted. Apparently such is the reason why there does not exist a decision of the Supreme Court of the United States setting aside, under the clause of defense by counsel of the Sixth Amendment, and in the sense of the *Zerbst* case, the subsequent trial in a federal court, for lack of legal assistance at stages prior thereto, whether before a Grand Jury, a United States Commissioner, or while the accused is in the hands of police officers. At those stages no judgment is passed definitively adjudicating the liberty of an individual. Of course, we do not have in mind now those situations where the Supreme Court has taken into account the absence of counsel at such stages as one of the many factors and elements that form a set of circumstances indicating a denial of a fair and impartial trial, or the involuntariness of a confession; nor do we have in mind, insofar as the federal courts are concerned, those other situations that have culminated in the supervisory and disciplinary ruling of McNabb.[13]

---

[13] *McNabb* v. *United States*, 318 U.S. 332, 87 L. Ed. 819 (1943).

In *Burall* v. *Johnston*, 146 F.2d 230 (1944), the Ninth Circuit rejected petitioner's contention in a habeas corpus to the effect that the court which tried him on the merits lacked jurisdiction because he did not have the assistance of counsel in the preliminary examination before the commissioner. The Supreme Court denied review. 325 U.S. 887. *Cf. Ferguson* v. *District of Columbia*, 133 A.2d 111 (1951) and cases cited therein. In *Gilmore* v. *United States*, 129 F.2d 199 (1942), another habeas corpus, the Tenth Circuit stated the following: "His contention that he was not provided with the aid and advice of counsel before signing the waiver of immunity and testifying in the presence of the grand jury is entirely without merit. He relies upon the Sixth Amendment to the Constitution which guarantees that 'in all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence.' . . . The inquiry made by the grand jury which resulted in the return of the indictment was not a criminal prosecution within the purview of the Sixth Amendment. His right to have the assistance of counsel for the defense of his case did not accrue until his indictment had been returned into court by the grand jury. In discussing the Sixth Amendment, the Supreme Court in Counselman v. Hitchcock, 142 U.S. 547, at page 563, 12 S.Ct. 195, at page 198, 35 L. Ed. 1110, said: 'But this provision distinctly means a criminal prosecution against a person who is accused and who is to be tried by a petit jury. A criminal prosecution under article 6 of the amendments is much narrower [in meaning] than a "criminal case," under article 5 of the amendments.' " The Supreme Court also denied review. 317 U.S. 631.

It is widely recognized in the federal as well as in the state jurisdiction that in a grand jury proceeding there is no right to counsel, even if the person might later be indicted. *Cf. United States* v. *Scully*, 225 F.2d 113 (1955), (C.A. 2), *cert. denied*, 350 U.S. 897; *United States* v. *Levine*, 127

F.Supp. 651 (1955); *United States* v. *Blanton*, 77 F.Supp. 812 (1948); *People* v. *Dale*, 179 P.2d 870 (1947); *Wickline* v. *Alvis*, 144 N.E.2d 207 (1957). *Cf. Setser* v. *Welch*, 159 F.2d 703, (C.A. 4, 1947), *cert. denied*, 331 U.S. 840; *Council* v. *Clemmer*, 177 F.2d 22, (C.A.D.C. 1949), *cert. denied*, 338 U.S. 880, and cases cited in footnote 10. At least, since the case of *Goldsby* v. *United States*, 160 U.S. 70, 40 L. Ed. 343 (1895), the twin provision on the Sixth Amendment giving an accused in a "criminal prosecution" the right to be confronted with the witnesses against him has been interpreted as not including preliminary proceedings. *Cf. Garrison* v. *Johnston*, (C.A. 9) 104 F.2d 128 (1939); *Moore* v. *Aderhold*, 108 F.2d 729 (C.A. 10, 1939); *McDonald* v. *Hudspeth*, 129 F.2d 196 (C.A. 10, 1942).

Regardless of what our opinion may have been in the past as to the time when a "criminal prosecution" commences for other purposes, *cf. People* v. *Rivera*, 9 P.R.R. 395 (1905); *People* v. *Capestany et al.*, 37 P.R.R. 547 (1928); *People* v. *Báez*, 40 P.R.R. 13 (1929); *People* v. *Lugo*, 58 P.R.R. 185 (1941), as a jurisdictional problem to be determined in this appeal and concerning the invalidation of the trial and the judgment of conviction, under § 2 of the Organic Act of 1917, petitioner's absolute and unqualified right to have counsel for defense in a "criminal prosecution" arose once the information which initiates the juridical process of notifying and hearing him before final determination of his guilt or innocence was filed. Under the first of the two propositions set forth, petitioner's trial and conviction were not void, and for this reason he will not be discharged.[14]

---

[14] In the state jurisdiction, within the Fourteenth Amendment, the question has presented a less rigid and more fluid concept, at least as to the obligation to appoint counsel, depending on a whole set of concurring circumstances in the denial of an impartial trial as well as the nature or seriousness of the offense. Although the decisions of the Supreme Court indicate a more marked tendency to make the right to legal assistance equally effective in both state and federal trials—*cf. Moore* v. *Michigan*, 355 U.S. 155 (1957), 2 L. Ed. 2d 167; *Chandler* v. *Fretag*, 348 U.S. 3 (1954); *Massey* v. *Moore*, 348 U.S. 105 (1954), 99 L. Ed. 135; *Palmer* v. *Ashe*, 342 U.S. 134 (1951), 96 L. Ed. 154; *Gibbs* v. *Burke*, 337 U.S.

Concerning the *due process of law* of the Fifth and Fourteenth Amendments, and we have now reached the second aspect of the question, the problem involves other considerations. Petitioner believes that the Supreme Court's decision in *In re Groban*, 352 U.S. 330 (1957), 1 L. Ed. 2d 376, condemns, in the light of said Amendments, the secret investigation and examination conducted by the district attorney authorized by our procedure, which does not permit defendant's counsel or relative to be present at that time. In *Groban*, the case concerned the refusal of some citizens to testify before the Fire Marshal who was authorized by law to investigate privately the causes of a fire, unless their counsel could be present at the proceeding. The statute compelled to give testimony. The Fire Marshal summarily committed them to jail until they were willing to testify, and they applied for a writ of habeas corpus alleging that they had a right, under the Due Process Clause, to the assistance of their counsel while giving their testimony. In an opinion by a majority of five to four, it was held that such privation of counsel did not violate due process in a proceeding that was not a criminal trial nor an administrative proceeding that would in any way adjudicate appellant's responsibility for the fire and although the evidence obtained may possibly lay a witness open to criminal charges, until such charges were made in a criminal procedure his constitutional protection was the privilege against self-incrimination. Explaining his vote with the majority, Judge Frankfurter, whom Judge Harlan joined, observed that if the statute were directed toward secret inquisition of those suspected of arson, the situation would be different; that the Fire Marshal was not a *prosecutor;* that, because this statute relating to a

773 (1949), 93 L. Ed. 1686; *Uveges* v. *Pennsylvania*, 335 U.S. 437 (1948), 93 L. Ed. 127; *Townsend* v. *Burke*, 334 U.S. 736 (1948), 92 L. Ed. 1690; *Wade* v. *Mayo*, 334 U.S. 672 (1948); 92 L. Ed. 1647; *Rice* v. *Olson*, 324 U.S. 786 (1945), 89 L. Ed. 1367; *House* v. *Mayo*, 324 U.S. 42 (1945), 89 L. Ed. 739—still in force is *Betts* v. *Brady* 316 U.S. 455 (1942), 86 L. Ed. 1595—and see: *Bute* v. *Illinois*, 333 U.S. 640 (1948), 92 L. Ed. 986; *Gryger* v. *Burke*, 334 U.S. 728 (1948), 92 L. Ed. 1683, and *Quicksall* v. *Michigan*, 339 U.S. 660 (1950), 94 L. Ed. 1188.

general administrative *non-prosecutorial* inquiry was sustained, it did not follow that secret inquisitorial powers given to a district attorney would have to be sustained. From these statements, particularly directed towards answering arguments of the minority opinion, petitioner deduces and maintains before us that the Supreme Court decided affirmatively in that case that the investigations and examinations privately conducted by our district attorneys for prosecuting purposes violate due process of law.

It is unquestionable that petitioner inferred too much from the statements in that opinion. Shortly afterwards, in the case of *Crooker* v. *California*, 357 U.S. 433, 2 L. Ed. 2d 1448, decided June 30, 1958, after the petition for habeas corpus was filed and on the day when we issued the writ, in a majority opinion of which Mr. Justice Frankfurter and Mr. Justice Harlan were part, the Supreme Court decided that a confession given by the accused therein while being interrogated by police officers was not vitiated with coercion and involuntariness in the light of all the circumstances and other facts present, passing for the first time on the coercive and involuntary nature of a confession obtained after denial of petitioner's express request to engage counsel in that investigatory phase.[15]

---

[15] It appears from the facts that Crooker was arrested at about 1:30 p.m. and taken to a police station where he was asked to take a lie detector test. He refused to do so and indicated that he wanted to call an attorney. He was interrogated for the first time from 8:30 and 9:30 p.m. centering around his refusal of the lie detector test. During this time he asked for an opportunity to get a lawyer, naming a specific attorney whom he thought might represent him, but he was told that after the investigation was concluded he could call an attorney. At 9:30 p.m. he was transferred to another police station where he was questioned from 11:00 p.m. until midnight and then from 1:00 to 2:00 a.m. For the next hour petitioner wrote and signed his confession of the murder. Afterward, he was taken to the victim's home to re-enact the crime and at 5:00 a.m. he was put in jail. That afternoon of the second day he was taken to the district attorney to orally repeat the confession. Crooker balked at doing so and again asked that his attorney be called. Thereupon the district attorney placed the call for him, and listened to the conversation on an extension phone. He interrupted at one point to

Because of the serious due process of law implications that attended the state denial of a request to employ an attorney, so the original says, certiorari was granted. (357 U.S. 434.)[16]

It was concluded, in the first place, *that the bare fact* of police detention and police examination in private of a person in official state custody did not render involuntary a confession, nor the failure of state authorities to comply with local statutes requiring that an accused be promptly brought before a magistrate. *Brown* v. *Allen*, 344 U.S. 443 (1953) ; *Fikes* v. *Alabama*, 352 U.S. 191 (1957). It follows therefore that our prosecution system of investigation in private does not fall, *per se*, within the margin of due process. Having so ruled, the Supreme Court then held that petitioner's contention as to coercion depended on denial of his request to engage counsel, and such contention was equally rejected, citing *Brown* v. *Allen*, 344 U.S. 443 (1953) ; *Stroble* v. *California*, 343 U.S. 181 (1952) ; *Gallegos* v. *Nebraska*, 342 U.S. 55 (1951), where it had been held that confessions made by indigent defendants prior to state appointment of counsel were not thereby rendered involuntary, even in prosecutions where conviction without counsel violated due process under the Fourteenth Amendment.[17]

---

deny that petitioner was forced to answer police questions. At 7 p.m. that evening petitioner met his attorney in jail. During the investigation he was advised that he did not have to say anything he did not want to.

[16] The Supreme Court limited the review to two questions:

"(1) Was the defendant denied due process of law by the refusal of the investigation officers to allow him to consult with an attorney upon demand being made to do so while he was in custody?

"(2) Was the defendant denied due process of law by the admission into evidence of a confession which was taken from him while in custody and after he had been in such custody for fourteen hours and had not been allowed to consult with his attorney?"

[17] *Cf. Stein* v. *New York*, 346 U.S. 156, 186–188, 97 L. Ed. 1522 (1952) ; *Lyons* v. *Oklahoma*, 322 U.S. 596, 599, 88 L. Ed. 1481 (1943) ; *Lisenba* v. *California*, 314 U.S. 219, 239–240, 86 L. Ed. 166 (1941) ; *State* v. *Rogers*, 120 A.2d 409, 412 (Conn. 1956), *cert. denied*, 351 U.S. 952; *State* v. *Grillo*, 93 A.2d 328, 332 (N.J. 1952), *cert. denied*, 345 U.S. 976; *State* v. *Buteau*, 68 A.2d 681 (Conn. 1949), *cert. denied*, 339 U.S. 903; *People* v. *Kelly*, 89 N.E.2d 27, 30 (Ill. 1949).

Turning then to the contention that even if the confes-sion was voluntary, its *use* violated due process because it was obtained after denial of petitioner's request to contact his attorney, since it deprived him of his constitutional right to representation and advice from his attorney and, there-fore, vitiated the confession itself for lack of due process, even though freely made, the court also rejected the conten-tion. Reaffirming that the assistance of counsel secured in state prosecutions by the Fourteenth Amendment guarantee of due process, included not only the right to have an attor-ney appointed by the state in certain cases, but also the right of an accused to a fair opportunity to secure counsel of his own choice, the majority said: (357 U.S. at 439.)

"Under these principles, *state refusal of a request to engage counsel* violates due process not only if the accused is deprived of counsel at trial on the merits, *Chandler v. Fretag, supra,* but also if he is deprived of counsel for any part of the pretrial proceedings, *provided that he is so prejudiced thereby as to infect his subsequent trial with an absence of 'that fundamental fairness essential to the very concept of justice.'* [Citations] The latter determination necessarily depends *upon all the circumstances of the case."* (Italics ours.)

In view of all the circumstances of the case—a volun-tary confession by a college-graduate who had attended one year of law school and who knew of his right to keep silent—it was finally concluded that Crooker was not a victim of a prejudicial impact nor had been so taken advan-tage, as to violate due process of law.

Again, in *Cicenia v. Lagay,* 357 U.S. 504, 2 L. Ed. 1523, decided on the same day as *Crooker,* the Supreme Court faced a similar contention in the light of the fact that in this case defendant requested and was denied during the interrogation an opportunity to confer with the lawyer whom he had already retained. In contrast with *Crooker,* he con-tended that his confession, even though voluntary, was never-theless vitiated by police refusal to permit him to confer with

counsel during his detention, and that this by itself violated due process, irrespective of the particular circumstances involved. The court rejected once more the contention that petitioner had a constitutional right under the Fourteenth Amendment to confer with counsel in that pre-trial phase, *Crooker, supra.* Establishing the proper balance that must rule in criminal cases between the fundamental right to legal assistance, on the one hand, and the obligation of police authorities to prosecute crime, on the other, Judge Harlan stated for the majority that a satisfactory formula for reconciling these competing concerns is not to be fund in any broad pronouncement that one must yield to the other, but instead, in judging whether state prosecutions meet the requirements of due process, this Court has sought to achieve a proper accommodation by considering a defendant's lack of counsel one pertinent element in determining from all the circumstances whether a conviction was attended by fundamental unfairness.

We thus see that in contrast to the way we presented the problem in the light of § 2 of the afore-mentioned Organic Act of 1917, and the way it has been presented in the federal courts pursuant to the Sixth Amendment, under due process of law of either the Fifth or Fourteenth Amendment, the right to assistance of counsel is not inescapably restricted to court action. *Crooker, Cicenia, supra; Moore* v. *Michigan,* 351 U.S. 155 (1957), 2 L. Ed. 2d 167; *Chandler* v. *Fretag, supra; Reese* v. *Geeorgia,* 350 U.S. 85 (1955), 100 L. Ed. 77. But there does not exist the absolute right under due process to enjoy legal representation or assistance in the investigatory stage of the crime, nor would the constitutional guarantee be violated upon state refusal of a request for legal aid at such stages unless, considering the fact together with other attendant circumstances and factors, the judgment of conviction is the fruit of a situation repugnant to these basic principles of liberty and justice essential to the concept of a fair and impartial trial.

Are we facing a similar situation in the case at bar? In the first place, petitioner has not alleged in his petition that the confession was produced by physical, mental or any other type of coercion. Consequently, he has not presented in this appeal the problem of his involuntariness, which if so, would have certainly vitiated the prosecution under due process. In the complementary brief filed after the hearing he expressly reasserts that he has not alleged that his confession was obtained by "moral" and physical coercion. Neither did he offer to that end any independent or additional evidence to the one presented at the murder trial, which we considered upon disposing of his appeal. (66 P.R.R. 210.) His case rests specifically on his alleged constitutional and absolute right to assistance of counsel while being interrogated at the preliminary examination, according to his peculiar interpretation and analysis of the *Groban* case. At the moment petitioner did not request legal assistance or counsel, but even if he had, we have noted that he had no such absolute constitutional right to it under the Due Process Clause; neither pursuant to § 2 of the Organic Act of 1917 nor to the local provisions of our criminal procedure. Thus, the contention that District Attorney Aponte was bound to advise him of said right, nonexisting as we have said at that stage, in order that it be considered as consciously waived by petitioner, collapses on its own weight.

Secondly, in the absence of the contention of involuntariness we need not conclude in the light of the *Crooker* case that the confession without assistance of counsel created a situation of fundamental unfairness that vitiated the subsequent trial under due process, because of petitioner's alleged mental condition. We have examined the evidence before us which is the same one presented in the murder trial and considered in deciding the appeal, and there is no basis to conclude, as we did not conclude at that time, that petitioner was a mentally defective person incapable of understanding the legal warnings of his right not to testify and as to the

826

use of his testimony. Although a psychologist testified that Rivera Escuté was a moron (on the basis of two vocabulary examinations to which he submitted him), the manner in which petitioner recited the facts in his confession and answered the district attorney's questions, destroys any idea of mental abnormality and reflects a clear mind with enough intelligence to realize what was going on, especially in view of the fact that he had studied up to the fourth grade.

Petitioner was familiar with investigations and prosecutions in court. In addition to his conviction of burglary for which he was committed in the Industrial Reform School, after being discharged he had been prosecuted and had served one year in jail for larceny of use.

In the light of the foregoing, petitioner will not be discharged pursuant to the constitutional clause of due process of law. Judgment will be entered dismissing the petition for habeas corpus.

Mr. Chief Justice Negrón Fernández did not participate herein.